George H. KIMBROUGH, Jr.,
Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant-Appellee.

No. 85-5541.

United States Court of Appeals,
Sixth Circuit.

July 8, 1986.

W. Howell Hopson, III, Futrell, Hopson & Parris, Cadiz, Ky., for plaintiff-appellant.

Ronald E. Meredith, U.S. Atty., Louisville, Ky., Robert E. Sims, for defendant-appellee.

Before WELLFORD and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.

PER CURIAM.

Plaintiff, George H. Kimbrough, Jr., appeals the Secretary's denial of Social Security disability benefits. A magistrate and district court have affirmed the denial.

At the time of his disability hearing, claimant was 35 years old. He has a high school education and had previously worked as an automobile mechanic. In 1980 claimant suffered a work-related injury that resulted in possible nerve root compression. An initial myelogram revealed

no significant damage, and the doctor advised claimant to return to work, but refrain from lifting heavy objects.

Claimant's pain persisted, and he received further testing to identify the source of pain. No test revealed any significant abnormality. Treating physician, Dr. R.L. Cash, referred claimant for full evaluation of his back problem to Dr. G.F. Meier in November 1981. Dr. Meier found that both of appellant's myelograms were normal, a CT scan of his spine was normal, and a bone scan also proved normal. Straight leg raising tests were negative. Another physician, Dr. V.E. Allen, stated that he had nothing further to offer claimant given the lack of objective medical findings, and thus recommended that he return to work.

Subsequent medical evaluation by Dr. J.M. Donely in February 1982 also revealed no evidence of disc herniation. X-rays of claimant's left leg were negative. Myelograms showed no evidence of disc herniation. His discogram was positive, but subsequent testing in May 1982 revealed that disc disease was not the source of his pain problem.

In March 1982, it was found that one of claimant's legs was slightly shorter than the other. Dr. Donely advised him to get a shoe lift to compensate for this condition.

In April 1982 claimant was hospitalized for a full evaluation of his pain. Review of all studies showed normal myelograms, with only an insignificant amount of disc disease. Claimant experienced pain relief with caudal epidural steroids. Dr. Meier noted in July 1982 that the orthopedic specialist, Dr. Donely, *had released plaintiff to return to work in June 1982.* Dr. Meier felt there were *no* significant abnormalities, except for some slight disc disease, none of which would prevent him from returning to work.

In July 1982, Dr. Donely was questioned in a deposition for the Kentucky Workers' Compensation Board. He rated claimant's physiological impairment at ten percent. Dr. Donely testified that there was no way to corroborate appellant's complaints of pain. Dr. Donely also said that from an anatomical point of view, claimant can squat, stoop and reach; the claimant's only limitations were his subjective complaints of pain.

Dr. Donely found that, paradoxically, the only abnormality indicated by the objective medical evidence was a small degree of disc degeneration on the right side; whereas, claimant's subjective complaints of pain concerned only the left side. Dr. Donely felt further myelograms for evaluation of claimant's back were unnecessary at the time. Furthermore, claimant had shown relief from pain with epidural blocks.

In August 1982, Dr. Cash again reviewed the medical evidence regarding claimant's back and found that his CT scan was normal. The electromyelogram reports were uncertain for nerve root irritation. There was no evidence of disc herniation or any need for surgical intervention. After examination in January 1983, Dr. Donely found that claimant's physical and neurological condition had basically remained normal and unchanged. In February 1983, claimant was again admitted for evaluation at Welborn Baptist Hospital. EMG and nerve studies were normal. CT scan showed no disc herniation. Physical examination of the lumbosacral spine revealed only a muscle spasm. Again the claimant was found fit for work. Overall, claimant's chief medical restriction only involved his avoidance of heavy lifting.

During hospitalization in February 1983, a psychological evaluation was made of claimant's mental status by Dr. Will Weiss. It was found that claimant had a psychological pain disorder, depression with anxiety, but no evidence of schizoid personality.

On April 18, 1983, Dr. Charles Epstein, a chiropractor, began treating claimant. Dr. Epstein reported in August 1983 that claimant was responding to treatment, and that his "muscle spasms in the lumbar spine are greatly reduced as is the pain".

At the hearing, claimant testified that he suffered severe, constant pain. The pain prevents him from doing heavy housework,

lawn work, and driving his car frequently. Standing and lifting are painful. for him, and he can sit only for short periods of time. Claimant does engage in light housework, enjoys upholstery work, and goes occasionally to his children's basketball games. It was noted that since his work-related injury, claimant had twice tried to return to work, but was forced to quit because of pain. Currently, claimant is receiving $344.50 of workers' compensation benefits twice a month.

The ALJ found that claimant could not perform his past relevant work involving heavy lifting. Despite finding that claimant had a "severe" musculoskeletal impairment, he concluded that "it is not of such a level of severity as to meet or equal the Listings contained in Regulations No. 4, Subpart P." The ALJ concluded:

Accordingly, although the only restrictions imposed on him by his treating physicians have been to avoid heavy lifting, I will give him the benefit of doubt and find that he does have some degree of pain. Even so, notwithstanding his continued complaint of pain, there is no indication by any of his treating physicians that he cannot engage in prolonged sitting. Therefore, although from a purely objective standpoint he could probably engage in even light or medium work activity, it will be assumed for the purpose of this decision, that his chronic pain limits him to no more than sedentary work activity.

The claimant's past relevant work as a mechanic was heavy in nature. Since he retains the residual functional capacity to engage in no more than sedentary work activity, he cannot return to his past relevant work.

The claimant is 35 years old, has a 12th grade education, and has performed past relevant work which was semi-skilled to skilled in nature. For purposes of this decision, any skills derived from his past work are considered not transferable to work other than that which was previously performed.

Considering his age, education, and past relevant work experience, Rule 201.-28, Table No. 1 of Appendix 2, Regulations No. 4, Subpart P, directs a conclusion that he be found "not disabled" within the meaning of the Act through the date of this decision.

This decision to deny benefits has been consistently affirmed by a magistrate and district court judge.

 Claimant argues that the ALJ improperly applied the grid in this case because pain is a nonexertional impairment, thereby precluding application of the grids. However, claimant misapprehends the significance of nonexertional impairments. In *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 528 (6th Cir.1981), it is *only* when "the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level that nonexertional limitations must be taken into account and a nonguideline determination made." Therefore, the mere possibility of a nonexertional impairment is insufficient. Not even a minor nonexertional limitation is enough; the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level. In those cases upon which claimant relies to show the Secretary's erroneous use of grids, the claimant's nonexertional impairments were severe. Although the ALJ gave claimant the "benefit of the doubt" and found that he had "some degree of pain," he apparently found it not to be severe. The district judge explained:

Although the ALJ did not specifically state that Kimbrough's nonexertional impairment was not severe enough to prevent him from performing a full range of sedentary work, that is the clear indication from his combined findings. In other words, the ALJ's separate findings that there were no nonexertional impairments, that Kimbrough could do a full range of sedentary work, and that Kimbrough's pain prevented light and medium work but not sedentary work, when taken in combination, have the effect of a

finding that Kimbrough's nonexertional impairment was not severe enough to prevent him from performing a full range of sedentary work. Thus, the issue. in this case is not merely whether Kimbrough has a nonexertional impairment, but whether there was sufficient evidence to support the ALJ's finding that there was no *significant* nonexertional impairment, i.e., one that would prevent Kimbrough from performing a full range of sedentary work. *See Kirk*, 667 F.2d at 537.

Upon a *de novo* review of the evidence, the district judge found the nonexertional impairment to be non-severe. Reviewing the Secretary's decision on a substantial evidence standard, that conclusion is correct. Objective tests and mild medication taken by claimant do not bear out the severity of claimant's pain. *See Goldsby v. Secretary*, 787 F.2d 590 (6th Cir.1986). The mere fact that claimant cannot return to his old job of heavy lifting does not determine his capacity to do sedentary work.

Claimant next contends that the Secretary's denial of benefits is simply *wrong*. However, we review the Secretary's decision to determine whether substantial evidence on the record as a whole supports the Secretary's decision. Although claimant subjectively may suffer from chronic back and leg pain, objective tests have not revealed any organic source for discomfort. Thus, the record provides substantial support for the Secretary's decision.

Claimant finally states that a remand is necessary so that the Secretary may conduct a psychological evaluation of claimant to determine if his chronic pain emanates from a psychological disorder. Claimant has never, however, asserted a mental impairment as a basis for benefits. We decline to impose an affirmative duty upon the Secretary to conduct psychological examinations on all claimants for whom the source of pain is not objectively proven to be organic. The 1984 amendments apply to cases in which a mental impairment has been listed as a basis for disability benefits.

Under these circumstances, the Secretary was not required to order a psychological examination.

For the foregoing reasons, we AFFIRM the denial of benefits.