**Floretta LAND, Plaintiff-Appellant,**

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,
Defendant-Appellee.**

**No. 86–5466.**

United States Court of Appeals,
Sixth Circuit.

Nov. 6, 1986.

Lenny L. Croce, Donna M. Lefebvre (argued) Rural Legal Services of Tennessee, Oak Ridge, Tenn., for plaintiff-appellant,

John W. Gill, U.S. Atty., Knoxville, Tenn., Paige A. Winck, Robert Simpson (argued), for defendant-appellee.

Before KENNEDY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

PER CURIAM.

Land, plaintiff-appellant, applied for widow's disability insurance benefits under the Social Security Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, sections 1.05(B), (C), and section 404.1526, alleging that her back impairment precluded her from any substantial gainful activity. The District Court concluded that the Administrative Law Judge's ("ALJ") decision denying benefits was supported by substantial evidence. We affirm.

Section 402(e) of the Social Security Act, 42 U.S.C. §§ 301–1397f (1982) ("Act"), provides disability benefits to a widow if (1) she is a widow of a wage earner who died fully insured; (2) she is between the ages of fifty and sixty; (3) she is disabled; and (4) her disability is expected to result in death or to last for a continuous period of not less than twelve months. 42 U.S.C. § 402(e). The sole issue in this case is whether plaintiff is disabled.

Section 423(d)(2)(B) of the Act provides that a widow or widower shall not be determined to be disabled under section 402(e) unless the "physical or mental impairment or impairments are of a level of severity which under the regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B). The Secretary's standards for disability are contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P. A widow cannot qualify for disability benefits unless specific clinical findings demonstrate that she suffers from one of these impairments or that she suffers from one or more unlisted impairments that singly or in combination are the equivalent of a listed impairment. 20 C.F.R. § 404.1578(a)(1) (1986).

Plaintiff contends that she meets the impairments listed at sections 1.05(B) and (C), and, alternatively, that the combination of her impairments is the equivalent of a listed impairment. Subsection (B) and (C) of section 1.05, the disorders of the spine provision, provide:

B. Osteoporosis, generalized (established by X-ray) manifested by pain and limitation of back motion and paravertebral muscle spasm with X-ray evidence of either:

1. Compression fracture of a vertebral body with loss of at least 50 percent of the estimated height of the vertebral body prior to the compression fracture, with no intervening direct traumatic episode; or

2. Multiple fractures of vertebrae with no intervening direct traumatic episode; or

C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of *significant* motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Part 404, Subpt. P, App. 1 §§ 1.05(B), (C) (emphasis added). Section 404.1526, the equivalency provision, provides in part:

If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment.

20 C.F.R. § 404.1526(a).[1]

Plaintiff contends that she is entitled to disability benefits because she suffers from generalized osteoporosis and osteoarthritis, a chronic sprain condition in the ligaments and muscles of her back, lower back syndrome, and is never free from pain. Plaintiff relies on the following medical evidence in support of her claim. Dr. Walker, plaintiff's physician, diagnosed her as having chronic lower back syndrome related to arthritis and osteoporosis. He also concluded that she has a chronic sprain in her back muscles and ligaments, has had numbness in her right leg, muscle spasms in her lower back, limited motion in her back, and is never free from pain. He has recommended that plaintiff apply hot packs daily, and has treated her with ultrasound and medication, including steroid injections.

Dr. Walker, in a letter written in response to a request from plaintiff's attorney to evaluate plaintiff's condition with respect to the regulations, stated that plaintiff's chronic low back syndrome and chronic sprain condition is not likely to improve, and will likely get worse. He also stated: "This is a 55 year old lady who has suffered with a low back problem since 1971 (14 years) at which time she had surgery on her back. I do not feel that there is any way that [plaintiff] could ever become a productive person and hold any type of job." Dr. Walker also concluded that, in connection with sections 1.05(B) and (C) of Appendix 1, plaintiff

definitely has osteoporosis and this is disabling within itself; [with respect to 1.05(C), plaintiff has] Herniated and degenertive [sic] disk disease manifested by symptomatology and documented by past history of disk surgery. She meets the criteria for both 1 & 2. Granted it is not continuous, but occurs with sufficient frequency, that it would preclude any job requiring her to be on the job 40 hours per week, on a continual basis.

Dr. Walker also reported that plaintiff could not sit for long periods of time, could not do any type of work requiring bending, twisting, or stooping, and could not lift weights over five to ten pounds and could only lift this weight a few times per day.

Plaintiff also has been treated by Dr. Spray, an orthopedic surgeon, between 1983 and 1985. He concluded that she has osteoporosis, which is generalized and apparent from an X-ray of her lumbar spine, radicular distribution of sensory loss manifested by the numbness in her right foot and leg, limitation in range of motion, possible recurrent herniated nucleus pulposus on the right, and right ankle reflex loss. In a letter responding to plaintiff's attorney's request to evaluate plaintiff's condition with respect to the regulations, Dr. Spray concluded that her symptoms have lasted for more than three months and can

---

1. Section 404.1526 also requires the Secretary to base the decision about whether an impairment is medically equal to a listed impairment on medical evidence only. "Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b).

be expected to last for more than twelve months. Nevertheless, Dr. Spray agreed with the ALJ's conclusion that plaintiff did not suffer significant motor loss.

Finally, plaintiff was examined by Dr. Gouffon, an orthopedic surgeon, at the request of the Secretary. His report notes that X-rays showed evidence of a previous myelogram done on her back. He also found a rather significant narrowing of L4–L5 with subchondral sclerosis and the disk space approaching only 2–3 millimeters. L5–S1 was similarly narrowed. The other disk spaces were found to be well preserved. Dr. Gouffon did state that the results of the examination were within normal limits of her age. Her back motion was good but restricted by perhaps twenty to thirty percent, probably due to her sedentary life-style. She did not have a muscle spasm, and, although she complained of pain, he found no sensory loss.

The ALJ concluded that plaintiff did not have a disability impairment listed in Appendix 1 or a combination of impairments medically equivalent to a listed impairment. With respect to section 1.05(C), the ALJ stated that although the record demonstrated a possible herniated nucleus pulposus and a significant degree of pain, plaintiff's muscle spasm was intermittent and the record failed to show a significant motor loss. Additionally, the record demonstrated that plaintiff's calf circumference appeared to be equal demonstrating that plaintiff did not have muscle weakness. According to the ALJ, this evidence demonstrated that plaintiff's condition did not meet the criteria in section 1.05(C). Furthermore, because plaintiff's other conditions appeared to the ALJ "to be an aggravation rather than a significant medical problem," the ALJ concluded that plaintiff was not entitled to benefits under section 404.1526, the equivalency provision. The Appeals Council denied review, and plaintiff filed suit.

The District Court affirmed the ALJ's conclusion. The Court stated that the opinion of Dr. Spray that plaintiff's symptoms did not meet or equal the listings in Appendix 1 was substantial evidence in support of the ALJ's conclusion. The District Court also noted that Dr. Gouffon's opinion, although somewhat equivocal, corroborated this finding.[2]

### I. Section 1.05(C)

■ Plaintiff must establish that she suffers a significant motor loss and muscle weakness to receive benefits under section 1.05(C). Dr. Spray, an orthopedic surgeon, concluded that plaintiff was not suffering a significant motor loss. Additionally, the equal circumference of plaintiff's calves indicates that she does not have muscle weakness. Thus, the ALJ's conclusion that plaintiff is not entitled to benefits under this section is supported by substantial evidence.

### II. Section 1.05(B)

■ Plaintiff did not claim that she was entitled to benefits under section 1.05(B) before the ALJ. On appeal to this Court, plaintiff contends that Dr. Spray's statements regarding plaintiff's condition entitle her to benefits. In a letter dated April 15, 1983, Dr. Spray noted that an X-ray taken three days before revealed "some osteoporosis and some osteoarthritic changes." Osteoporosis and osteoarthritis were noted again after Dr. Spray's examination on June 10, 1985. Dr. Walker stated that plaintiff has osteoporosis and that "this is disabling within itself." The Secretary correctly points out that nothing in the record indicates that Dr. Walker X-rayed plaintiff or included the word osteoporosis in his notes from plaintiff's examinations, but apparently relied on Dr. Spray's report in reaching his conclusion that plaintiff's osteoporosis is disabling.

More significantly, section 1.05(B) requires plaintiff to provide X-ray evidence of either a compression fracture or a fracture of a vertebral body. Because she has not

---

**2.** The ALJ did not rely on Dr. Gouffon's report in reaching his decision. He did not, however, state that he rejected it.

presented this evidence, plaintiff has not met the requirements of section 1.05(B).

### III. Equivalency

Plaintiff contends that even if she does not meet the criteria of sections 1.05(B) and (C), her combined vertebrogenic disorder, osteoporosis, and pain are the equivalent of a listed impairment entitling her to benefits under 20 C.F.R. § 404.1526. Plaintiff asserts that her osteoporosis and pain are medically equal to the impairments listed under section 1.05(C).

As discussed above, plaintiff will be found disabled if she suffers from one or more unlisted impairments that singly or in combination are the medical equivalent of a listed impairment. An impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs, and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments. This decision must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques. 20 C.F.R. § 404.1526(b).

This Court has recently considered section 404.1526. In *Dorton v. Heckler*, 789 F.2d 363 (6th Cir.1986), plaintiff claimed she was disabled as a result of multiple and cumulative circulatory, respiratory, and nervous system ailments. The Court concluded that plaintiff was not disabled within the meaning of the listed impairments, and considered plaintiff's argument that she was entitled to benefits under the equivalency provision. Plaintiff's physician reported that she had chronic obstructive pulmonary disease, chronic nervous tension, migraine headaches, diabetes, asthma, labyrinthine vertigo, and tinnitus, and that these symptoms taken together were medically equivalent to a listed impairment. The Court found little clinical support establishing the requisite severity to find disability, and concluded the ALJ's denial of benefits was supported by substantial evidence.

In the present case, plaintiff's additional ailments do not demonstrate that her combined impairments are equivalent to the impairments listed in section 1.05(C). As discussed above, plaintiff failed to meet the requirements of section 1.05(C) because the record did not indicate that she had muscle weakness or significant motor loss. Plaintiff provided no medical evidence demonstrating that her osteoporosis limited her ability to pursue gainful employment. Additionally, the record contained evidence that her pain was intermittent. Thus, the ALJ's conclusion that plaintiff was not entitled to benefits under section 404.1526 is supported by substantial evidence.

Accordingly, the judgment of the District Court is affirmed.